UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ADAM G. KRELLENSTEIN,

Plaintiff,

-against-

JAMES B. KRELLENSTEIN, GARRET WILKINSON, AND ALVA ENERGY, INC.,

Defendants.
--------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
25-cv-872 (CBA) (RML)

**AMON, United States District Judge:**

## INTRODUCTION

Plaintiff Adam Krellenstein brings this diversity of citizenship action against Defendants James Krellenstein, Garret Wilkinson, and Alva Energy, Inc. Plaintiff alleges that he entered into an oral agreement with Defendants Krellenstein and Wilkinson to provide advisory services to a start-up venture named Alva Energy in exchange for an immediately vested 15% equity stake in the resulting company. He argues that despite providing the contracted-to advisory services, Defendants have since frozen Plaintiff out of their corporation, Alva Energy, Inc., depriving Plaintiff of his equity stake in the business. Plaintiff asks me to declare that he holds 15% of nominal defendant Alva Energy, Inc.'s stock, and to compel Alva Energy, Inc. to issue stock certificates to Plaintiff reflecting his 15% ownership of stock. Defendants move to dismiss Plaintiff's complaint in its entirety for failure to state a claim upon which relief may be granted. They state that the oral agreement is unenforceable under New York's Statute of Frauds, that subsequent written contracts prevent recovery under the earlier oral agreement, that none of the Defendants are liable under corporate law, and that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of the breach of contract claim. For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

According to the Amended Complaint, in early 2023, Defendant Adam Krellenstein, on behalf of himself and Defendant Garret Wilkinson (together "Individual Defendants"), approached Plaintiff for help with their idea for a new venture. (ECF Docket Entry ("D.E.") # 6 ("Amend. Compl.") ¶ 12.) They had an idea for Alva Energy, a company in the nuclear field, but needed help with business strategy and fundraising. (Id. ¶ 14.) Plaintiff was experienced in building successful businesses, including bringing technologically sophisticated products to market, and "[h]is ability to combine technical innovation with investor relations, team building, commercial negotiation, fundraising strategy, and go-to-market execution has positioned companies for success." (Id. ¶ 10.) In contrast, the Individual Defendants lacked experience in business, fundraising, venture capital, and commercial dealmaking. (Id. ¶ 13.) They sought Plaintiff's help in these areas. (Id. ¶ 14.)

Plaintiff and the Individual Defendants entered into an oral agreement in Spring 2023. (Id. ¶ 15.) Plaintiff and Defendant Krellenstein, on behalf of himself and Defendant Wilkinson, agreed that Plaintiff would receive an immediately vested 15% equity stake in "Alva Energy" in exchange for Plaintiff providing "strategic advisory services" including "fundraising, software system design, go-to-market strategy, hiring strategy, commercial negotiation, and overall business strategy" to the company. (Id.) In May 2023, Alva Energy LLC was formed. (Id. ¶ 16 n.2.) Alva Energy LLC had a consulting-based business model "focused on providing services to clients in exchange for revenue." (Id. ¶ 19.)

After the agreement was made, Plaintiff immediately began providing advisory services to Alva Energy LLC. (Id. ¶ 17.) Plaintiff "attend[ed] business meetings, consult[ed] with legal counsel, review[ed] project proposals, develop[ed] the fundraising strategy, edit[ed] fundraising

materials, advis[ed] on hiring and team management [including advising on the hiring of Alva Energy, Inc.'s current Chief Technology Officer], and implement[ed] a proof-of-concept software solution for automated analysis of nuclear regulatory documents." (Id. (internal footnote omitted).) He also established Alva Energy GmbH, a wholly owned subsidiary of Alva Energy LLC in Germany, capitalized with €20,000 of his personal funds. (Id. ¶ 18.)[1]

The dispute between Plaintiff and the Individual Defendants began when "the parties decided to shift Alva Energy to a venture-based business model." (Id. ¶ 19.) The parties decided to create a corporation, Alva Energy, Inc., to "allow for scalability through venture capital funding." (Id.) They did so at Plaintiff's recommendation. (Id. ¶ 24.) Plaintiff was heavily involved in developing the "venture-backed business model that Alva Energy has adopted," providing strategy on how to present plans to investors. (Id. ¶¶ 25-26 (citing a "PowerPoint Outline" prepared by Defendant Krellenstein with notes from call with Plaintiff on November 22, 2023).) Yet, despite Plaintiff's alleged assistance, even before incorporation, the Individual Defendants repudiated their agreement. The Individual Defendants froze Plaintiff completely out of Alva Energy, Inc. and "deliberately excluded Plaintiff from meetings, calls, and strategic initiatives . . . to prevent Plaintiff from providing additional Advisory Services to Alva Energy under the Agreement." (Id. ¶ 22.) They also explicitly denied Plaintiff's demands for a 15% equity stake in Alva Energy, Inc., with Defendant Krellenstein messaging Plaintiff to state that he "rejects that [Plaintiff] ha[s] an ownership claim to Alva Energy Inc." (Id. ¶ 27.)

In August 2024, Alva Energy, Inc. was incorporated.[2] (Id. ¶ 20.) Plaintiff alleges that "Alva Energy, Inc. is merely a continuation of Alva Energy, LLC," and that his 15% equity stake that was negotiated in 2023 should be recognized with respect to Alva Energy, Inc. (See id. ¶ 24.)

---

[1] Alva Energy GmbH, the German subsidiary, no longer exists. (Amend. Compl. ¶ 18 n.4)
[2] Alva Energy, Inc. and Alva Energy LLC both currently exist as solvent entities. (D.E. # 19-9 ("Mot.") at 16.)

Plaintiff filed this diversity action on February 14, 2025 against Alva Energy, Inc. (D.E. # 1.) He then amended his complaint on April 4, 2025 to bring suit against Defendant James Krellenstein and Defendant Garret Wilkinson, in addition to the corporation. (See Amend. Compl. ¶ 1.) He asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Individual Defendants.[3] (Id. ¶¶ 29-40.) He also asked for a judgment "declaring that Plaintiff holds 15% of Defendant Alva Energy, Inc.'s stock with all rights, including, without limitation, voting rights, associated therewith," and "[c]ompelling Defendant Alva Energy, Inc. to issue stock certificates reflecting Plaintiff [sic] 15% ownership and record same on the [sic] Alva Energy, Inc.'s ledgers." (Id. ¶¶ 41-44.) Defendants then moved to dismiss on October 17, 2025 pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. # 19-9 ("Mot.").)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure l2(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint will be dismissed unless the plaintiff states a claim that is "'plausible on its face'" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court must dismiss a claim if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 679. Although courts will not credit "conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id. at 678, the court must accept as true all material factual allegations and draw all reasonable inferences in the plaintiff's favor. Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

[3] Plaintiff repeatedly asserted at the pre-motion conference and in his papers that Alva Energy, Inc. is a nominal defendant and that all claims are asserted only against the Individual Defendants. See Transcript of Pre-Motion Conference, Krellenstein v. Alva Energy, Inc., No. 25-cv-872 (D.E. # 26), at 8:12-18.

Ordinarily, only the facts alleged in the complaint are considered in evaluating a motion to dismiss. However, in addition to the complaint itself, a court can consider writings or documents integral to the complaint on a motion to dismiss. Stinnett v. Delta Air Lines, Inc., 278 F. Supp. 3d 599, 607 (E.D.N.Y. 2017). A document is "integral to [a] complaint" when "the complaint relies heavily upon its terms and effects." Id. (internal quotation marks and citation omitted). Additionally, an affirmative defense such as the Statute of Frauds "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Daiei Trading Co. v. Williams Rice Milling Co., 30 F. App'x 13, 14 (2d Cir. 2002) (cleaned up) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)).

## DISCUSSION

### I. Breach of Contract

Plaintiff asserts a breach of contract claim based upon an oral agreement between him and Defendants. Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted). Plaintiff asserts that he entered into an oral agreement with the Individual Defendants in March 2023, whereby he agreed to provide advisory services to "Alva Energy" in exchange for a 15% equity stake in the resulting company. (Amend. Compl. ¶ 1.) He asserts that he performed his obligations by providing advisory services to Alva Energy, including by "advising [Defendant] Krellenstein on all aspects of Alva Energy's business, attending business meetings, consulting with legal counsel, reviewing project proposals, editing fundraising materials, advising on hiring and team management, implementing a proof-of concept software

solution for automated analysis of nuclear regulatory documents, establishing Alva Energy GmbH in Germany, and developing the venture-backed business model strategy that resulted in the formation of, and venture investments in, Alva Energy, Inc." (Id. ¶ 31.) He argues that the Individual Defendants have breached this contract by refusing to give Plaintiff a 15% equity stake in Alva Energy, Inc. (Id. ¶¶ 34-35.) Plaintiff finally states that he has sustained harm due to the deprivation of his stake in the corporation and the rights he would obtain as a stakeholder. (Id. ¶ 35.)

Defendants assert several defenses to this cause of action. First, Defendants claim that the 2023 oral agreement is unenforceable under New York's Statute of Frauds. (See Mot. at 7.) Second, Defendants argue that subsequently executed written contracts, which disclaim any prior agreements, supersede the 2023 oral agreement. (Id. at 21-23.) Third, Defendants argue that the Individual Defendants cannot be liable because they are corporate officers who "are not personally liable [for a corporation's] contractual obligations" absent "clear and explicit evidence of their intention to substitute or superadd . . . personal liability." (Id. at 16-17 (cleaned up).) Finally, they argue that Alva Energy, Inc. is not a nominal party, as Plaintiff asserts, but rather a "real party in interest." (Id. at 13.) I address these arguments in turn.

**A. Statute of Frauds**

Defendants first argue they are not liable because any oral agreement is unenforceable under New York's Statute of Frauds, General Obligations Law § 5-701(a)(10), which provides that an agreement which is "a contract to pay compensation for services rendered in negotiating . . . a business opportunity" is void unless it is in writing and signed by the party to be charged. N.Y. Gen. Oblig. L. § 5-701(a)(10). Specifically, it reads: "'[n]egotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or

consummation of the transaction." Id. Defendants assert that Plaintiff's obligations under the alleged oral agreement were providing the "know-how" and "know-who" to form Alva Energy. (Mot. at 7-8.) They argue that services resulting in the formation of a new entity, like Alva Energy LLC, Alva Energy GmbH, and Alva Energy, Inc. are services rendered in support of a "'business opportunity.'" (Id. at 10-11 (quoting Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010).) Because § 5-701(a)(10) applies to this agreement, Defendants argue, the agreement is unenforceable without a writing that comports with the Statute of Frauds, and Plaintiff has failed to allege the existence of any such writings. (Mot. at 11.)

Plaintiff mounts two challenges to the application of the Statute of Frauds. He first argues that his described role does not fall within § 5-701(a)(10) given the plain text of the statute and the statute's legislative history. (D.E. # 20 ("Opp.") at 7-8 (citations omitted).) Under Plaintiff's reading, § 5-701(a)(10) only applies to intermediaries facilitating a deal between principals, and it was enacted to inhibit the middlemen who did little to bring about a transaction from claiming enormous commissions. (Id.) Second, he contends that he provided an array of services beyond those that were related to negotiating a business opportunity, so the statute does not apply. (Id. at 10-13.) For the reasons outlined below, neither argument is persuasive.

**1. Plaintiff's advisory role places him within the ambit of § 5-701(a)(10)**

Plaintiff argues that the strict, proper reading of § 5-701(a)(10) only applies to an individual who functions independently as a middleman to assist in the obtaining of a business opportunity, and not to someone who acts as a joint venturer or principal. (Id. at 8-10.) The exact text of § 5-701(a)(10) provides:

> (a) Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . .
>
> > (10) Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. . . .
> >
> > N.Y. Gen. Oblig. L. § 5-701(a)(10).

The relevant part of the statute for the purposes of the instant case is "a contract to pay compensation for services rendered in negotiating . . . a business opportunity." Id. The statute defines "[n]egotiating" as either "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." Id. (emphasis added). Although Plaintiff is correct that the plain text of the statute applies to a middleman seeking compensation for his services in procuring an introduction to a party to the transaction, the statute has been interpreted to have a broader application. See Transition Invs., Inc. v. The Allen O. Dragge, Jr. Fam. Tr., No. 11-cv-4775, 2012 WL 1848875, at *4 (S.D.N.Y. May 21, 2012) ("The New York Court of Appeals has read § 5-701(a)(10) broadly to cover services rendered in negotiating a business opportunity.") (internal quotation marks and citations omitted). Specifically, "negotiating" includes someone seeking compensation for services rendered in assisting with the consummation of a transaction or business opportunity.

The New York Court of Appeals instructs courts to interpret § 5-701(a)(10) on a "case-by-case basis." See Sporn v. Suffolk Mktg., 56 N.Y.2d 864, 865 (1982) (cleaned up); see also Tower Int'l, Inc. v. Caledonian Airways, Ltd., No. 97-7378, 1998 WL 3614, at *2 (2d Cir. Jan. 8, 1998) (unpublished table decision). In suggesting the proper interpretation of the statute, Plaintiff points

to a case from 1967 describing that the intent of § 5-701(a)(10) was to address "the problem of . . . men who claimed enormous commissions for negotiating the sale of a business . . . by virtue of having made a telephone call or two to put the parties in touch with each other." Lounsbury v. Bethlehem Steel Corp., 277 N.Y.S.2d 700, 702-03 (Civ. Ct. 1967). Plaintiff argues that § 5-701(a)(10) applies to intermediaries and not principals of a transaction. (Opp. at 9 (citing Charles Hyman, Inc. v. Olsen Indus., Inc., 163 A.D.2d 232, 235-36 (App. Div. 1990)).) Alternatively, Plaintiff analogizes his role to that of a joint venturer which he argues would take his oral contract outside the Statute of Frauds. (Id. at 10 (citing Train v. Ardshiel Assocs., Inc., 635 F. Supp. 274, 277-78 (S.D.N.Y. 1986), aff'd, 805 F.2d 391 (2d Cir. 1986)).)

To start, Plaintiff argues that because he is a "principal" of Alva Energy, § 5-701(a)(10) is inapplicable to his agreement. (Opp. at 9-10.) Plaintiff's status as a "principal" is based on his alleged co-ownership of Alva Energy through the 15% stake. (Id. at 10.) That argument fails for several reasons. First, it is irrelevant how Plaintiff describes his role because the applicability of § 5-701(a)(10) turns on the services he agreed to perform and not the "label plaintiff puts on [his] services." Belotz v. Jefferies & Co., No. 98-cv-2587, 1999 WL 587916, at *2 (S.D.N.Y. Aug. 4, 1999) (finding that the plaintiff was not acting as a "co-finder" or "joint venturer" as he claimed), aff'd, 213 F.3d 625 (2d Cir. 2000). Merely owning shares in the company or being a member of the founding team does not render § 5-701(a)(10) inapplicable or make it impossible for a party to act as an intermediary under the Statute of Frauds. In Zeising v. Kelly, the court found that § 5-701(a)(10) barred an agreement where the plaintiff "was to receive a 12% share of [the new company's] founder's stock" in exchange for his services. 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) (internal quotation marks omitted). Plaintiff's complaint clearly states that he was approached in early 2023 to provide services to "advis[e] and aid[] the founders" and provide

"strategic advisory services." (Amend. Compl. ¶¶ 14-15.) He was acting as an advisor or consultant to the founders, a role that courts have found to be within the scope of § 5-701(a)(10). See, e.g., Tech+IP Advisory, LLC v. Blackberry Ltd., No. 23-cv-5996, 2024 WL 4167501, at *1 (S.D.N.Y. Sept. 12, 2024) (applying § 5-701(a)(10) to an agreement for "strategic advisory services"); Caro Capital, LLC v. Koch, No. 20-cv-6153, 2022 WL 463338, at *8 (S.D.N.Y. Feb. 14, 2022) (applying § 5-701(a)(10) to "consulting contracts"); Snyder v. Bronfman, 13 N.Y.3d 504, 506 (2009) (applying § 5-701(a)(10) to the plaintiff's role as defendant's "principal advisor").

The complaint is also devoid of allegations that the relationship between Plaintiff and Defendants was anything akin to a joint venture. New York law provides that a joint venture agreement requires, inter alia, some provision for the sharing of profits and losses. See Abbas Corp. (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc., 820 F. Supp. 2d 549, 553 (S.D.N.Y. 2011). Plaintiff relies on the discussion in Train to argue that being similar to a joint venture, but not meeting every element, is sufficient for the exception to apply. (Opp. at 10 (citing Train, 635 F. Supp. at 278 ("[W]hen the two finders agree orally to pool their efforts and share the benefits the resulting temporary enterprise need not meet every legal requirement of a joint venture for the agreement to be binding.")).) Train in turn relies on the decision in Dura v. Walker, Hart & Co. where the court found that § 5-701(a)(10) did not apply to a situation where two co-finders or co-brokers had entered into a contract to share a commission related to a business opportunity, an arrangement which the court found was akin to a joint venture. 318 N.Y.S.2d 289, 289-90, 292 (1971); see also Snyder, 13 N.Y.3d at 507, 509-10 ("We held in [Dura] that [§ 5-701(a)(10)] did not apply to an oral agreement between two finders to share a commission."). These cases do not help Plaintiff. There are no allegations in the complaint that there was any agreement to share profits and losses. Here, the elements of a joint venture under New York law were not met and

the relationship between the parties was not similar to a joint venture. Consequently, I find that regardless of the labels Plaintiff puts forward in his opposition brief, there is ample precedent for the agreement alleged in the complaint to fall within § 5-701(a)(10) in light of the services he agreed to provide.

**2. Plaintiff's allegedly contracted-to duties constituted negotiating a business opportunity under § 5-701(a)(10)**

Finding that Plaintiff's role as a strategic advisor could place an agreement he made within the Statute of Frauds, I now turn to an examination of the services he agreed to perform. Although some duties Plaintiff performed in the course of his strategic advisory services fell outside the scope of the Statute of Frauds, (see, e.g., Amend. Compl. ¶ 15 (software system design)), others were well within the scope, such as assistance with commercial negotiation, (id.), fundraising, (id.), how to present the venture to investors, (id. ¶ 26), and advising on the conversion of the corporate form, (id. ¶ 19). See Tech+IP Advisory, 2024 WL 4167501, at *5 (advice and analysis regarding financial structuring fall within § 5-701(a)(10)); Gutkowski, 680 F. Supp. 2d at 613 (identifying potential business partners and analyzing business opportunity were "easily encompassed" within "negotiating"); Caro Capital, 2022 WL 463338, at *7 ("preparing presentations for potential investors" and "developing a general negotiating strategy" are within scope of the Statute of Frauds). Plaintiff's alleged duties were very similar to those of the plaintiff in Zeising who was promised equity in exchange for "putting together a financial and business plan" and "preparing and making detailed presentations [to investors]." Zeising, 152 F. Supp. 2d at 343 (internal quotation marks omitted). The allegations in the complaint here demonstrate that Plaintiff's role was, to a significant degree, to provide the "know-how" and "know-who" in creating Alva Energy and bringing about potential deals with investors, putting much of the

agreement within the Statute of Frauds. See Greystone P'ships Grp., Inc. v. Koninklijke Luchtvaart Maatschappij N.V., 815 F. Supp. 745, 756 (S.D.N.Y. 1993) (citation omitted). Indeed, Plaintiff's own allegations indicate he was approached by Defendant Krellenstein for the "deep expertise" and "ability to combine technical innovation with investor relations, team building, commercial negotiation, fundraising strategy, and go-to-market execution" which Defendants lacked. (Amend. Compl. ¶¶ 8, 10-12.)

Recognizing that some of his activities indeed fall within the classes of services that courts have found to be barred by § 5-701(a)(10), Plaintiff maintains that his "activities went far beyond merely 'negotiating' a business opportunity under [§ 5-701(a)(10)]," (Opp. at 10), such that § 5-701(a)(10) does not apply to the wide variety of services he provided. Plaintiff cites two principal cases in support of that proposition: Super v. Abdelazim, 485 N.Y.S.2d 612 (App. Div. 1985) which is factually distinguishable, and Dorfman v. Reffkin, 37 N.Y.S.3d 517 (App. Div. 2016) which he misreads.

Plaintiff cites Super, which he submits held that when "a wide variety of services" are rendered that go beyond "merely negotiating a business opportunity," § 5-701(a)(10) does not apply. (See Opp. at 10-11 (citing 485 N.Y.S.2d 612 at 614).) The same argument was advanced by the plaintiff in Belotz, citing both Super and the District Court's application of Super in Riley v. N.F.S. Services, Inc., 891 F. Supp. 972, 977 (S.D.N.Y. 1995). See Belotz, 1999 WL 587916, at *4. The court in Belotz distinguished this exception on the grounds that those cases principally involved employees performing "a wide variety of services" in the scope of their employment duties—as a construction manager in Super and under an employment agreement in Riley. Id. Those cases were not applicable to the consulting agreement alleged in Belotz because they involved a variety of duties performed in the scope of an employment agreement which was found

to be beyond the limitations of § 5-701(a)(10). Id. at *2, *4 (citing Maemone v. Koren-DiResta Constr. Co., 356 N.Y.S.2d 327, 328 (App. Div. 1974)). As in Belotz, Plaintiff does not allege that the oral contract was made to hire him pursuant to an employment agreement, rendering the holdings in Super and Riley inapplicable.

Plaintiff also relies upon Dorfman v. Reffkin for the principle that he retains a claim for breach of contract where he provided a "wide variety of services" that exceeded the statute's definition of "negotiating." (See Opp. at 12 (citing Dorfman, 37 N.Y.S.3d at 524).) But Plaintiff misreads that decision.[4] The facts of Dorfman are a relatively close match to the facts in the instant case: defendant Reffkin was a banker with little knowledge of the New York real estate market; plaintiff Dorfman already had start-up experience in the industry. Dorfman, 37 N.Y.S.3d at 518-19. Reffkin expressed an interest in partnering with Dorfman on a new real estate start-up. Id. Dorfman alleged that he "made significant contributions" to the formation of the start-up: developing fundraising materials, recruiting engineers, budgeting, and participating in software development. Id. at 520. Reffkin made offers to Dorfman consisting of small equity stakes in the start-up in exchange for the work Dorfman did in the early stages of the start-up's formation, which Dorfman rejected given the start-up's $360 million valuation. Id. Dorfman then sued for, inter alia, breach of implied contract, quantum meruit, and unjust enrichment. Id. The trial court granted Reffkin's motion to dismiss the breach of implied contract claim, finding the services put any implied contract within the Statute of Frauds, but it denied Reffkin's motion to dismiss the

[4] Plaintiff describes the Appellate Division in Dorfman as "reversing the trial court's dismissal of plaintiff's claims under [the General Obligations Law]." (Opp. at 12.) That is inaccurate. The trial court indeed dismissed the plaintiff's breach of implied contract claim, but that dismissal was not reversed on appeal. As noted, the Appellate Division instead reversed the complete denial of the defendant's motion to dismiss the quantum meruit and unjust enrichment claims. Dorfman, 37 N.Y.S.3d at 524. In other words, the Appellate Division's reversal was favorable to the defendant, not the plaintiff.

unjust enrichment and quantum meruit claims based on the same facts.[5] Id. at 520-21. Crucially, in Dorfman, the Appellate Division modified the trial court's order only as to how the "wide variety of services" impacted the sustained quantum meruit and unjust enrichment claims. Id. at 524. Specifically, the Appellate Division agreed that when "a wide variety of services"—some of which fall under § 5-701(a)(10)— are performed to consummate a business opportunity, only those that do not fall under the Statute of Frauds may be pursued under a quantum meruit or unjust enrichment theory. See id. But this holding said nothing of the breach of contract claim. See id. Here, Plaintiff has not advanced an unjust enrichment or quantum meruit claim, rendering the holding in Dorfman inapposite.[6]

To the extent that Plaintiff argues that he may still proceed on his breach of contract claim because some of his duties were outside the Statute of Frauds, it is well settled that unless the contractual provisions are severable, if part of a contract is void under the Statute of Frauds, the whole of such contract is void. See Whitman Heffernan Rhein & Co. v. Griffin Co., 557 N.Y.S.2d 342, 343 (App. Div. 1990) ("[T]he general rule is that if part of an entire contract is void under the Statute of Frauds, the whole of such contract is void."); see also Haughton v. Cognisight, LLC, 953 F. Supp. 2d 478, 485-86 (W.D.N.Y. 2013) (finding that when "a wide variety of services" are performed, the entire oral agreement is void unless the record reflects the contract is severable). The provisions of Plaintiff's contract are inseverable: all were intertwined as tasks performed in the course of his "strategic advisory services," and all were supported by the consideration of

[5] These rulings were made from the bench at oral argument. See Transcript of Oral Argument, Dorfman v. Reffkin, No. 652269/2014 (D.E. # 175). As Justice Oing noted, while the plaintiff "did other things" beyond negotiation, there was "no way [to] go around the fact that" his work towards co-founding the company at issue entailed consummating "a straight up business opportunity that falls within the General Obligations Law," making the breach of implied contract claim "insufficiently pleaded." Id. at 50:6-51:17.

[6] At oral argument, I noted without objection from counsel that Plaintiff has not made a quantum meruit claim. (See D.E. # 27 at 8:6-7 ("There is not a cause of action for quantum meruit."); 22:3-5 ("All of that suggests that you would have perhaps maybe a claim for quantum meruit, which you haven't brought here.").)

Plaintiff's 15% equity stake in Alva Energy which "cannot be apportioned without doing violence to the terms of the agreement." Castellotti v. Free, 27 N.Y.S.3d 507, 512 (App. Div. 2016). Accordingly, the oral agreement is unenforceable as the contracted-to advisory services fall within the scope of New York's Statute of Frauds, and there is no writing alleged that satisfies the Statute of Frauds.

### B. Written Contracts

Defendants advance a second ground upon which to dismiss the oral breach of contract claim; namely, that the oral agreement was superseded by two subsequent written agreements that are implied in the complaint. (See Mot. at 19-23.) One is the Service Contract, which Plaintiff signed on June 13, 2023, a few months after the alleged oral agreement, and the other is the Termination Agreement which Plaintiff signed on May 1, 2024, over a year after the oral agreement. (See D.E. # 19-2 ("Service Contract") at 7; D.E. # 19-3 ("Termination Agreement") at 7.) Plaintiff does not dispute that these agreements are implied in his complaint.[7] Instead, he argues that these German contracts relate solely to Plaintiff's employment with Alva Energy GmbH, the wholly owned German subsidiary of Alva Energy LLC, and relate to remuneration, not equity. (Amend. Compl. ¶ 18; Opp. at 21-22.)

Although the Termination Agreement is between Alva Energy GmbH and Plaintiff, the agreement provides that "[a]ny other service relationship of the [Plaintiff] with the Company or with a Company affiliated with the Company within the meaning of § 15 AktG . . . will end on the Termination Date." (Termination Agreement § 1.) Under German law, a wholly owned subsidiary

---

[7] At oral argument on January 22, 2026, Plaintiff's counsel agreed that I may consider these exhibits on this motion. Transcript of Oral Argument, Krellenstein v. Alva Energy, Inc., No. 25-cv-872 (D.E. # 27), at 23:22-24. See also DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (the court may consider documents that are not explicitly referenced in the complaint if they are integral to the complaint).

would be affiliated with the parent company.[8] Because the Termination Agreement constituted the entirety of the agreement between Plaintiff and Alva Energy GmbH, it must also constitute the entirety of the agreement between Plaintiff and Alva Energy LLC. "Under New York law, a subsequent contract regarding the same subject matter supersedes a prior contract because prior agreements and negotiations are deemed to merge and be subsumed in a later written agreement." Hatteras Enters., Inc. v. Forsythe Cosmetic Grp., Ltd., No. 15-cv-5887, 2022 WL 3682270, at *7 (E.D.N.Y. Aug. 25, 2022) (cleaned up); see also Indep. Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184, 1195 (S.D.N.Y. 1996) (a claim for breach of a purported oral agreement "must fail" when it is superseded by a subsequent contract regarding the same subject matter).

Similarly, Plaintiff's contention that the written contracts do not govern because they refer to remuneration, which does not include equity, is unpersuasive. (Opp. at 21-22.) Section 2 of the Termination Agreement states that the "parties agree that [Plaintiff] has no further remuneration claims or claims against the Company or Affiliated Companies to any other payments such as any bonuses, commissions, gratuities, special annual payments or premiums." (Termination Agreement § 2.) Courts have referred to agreements where equity-based compensation is considered remuneration. See, e.g., SEC v. Worldcom, Inc., No. 02-cv-4963, 2003 WL 22004827, at *3 (S.D.N.Y. Aug 26, 2023) (referring to compensation "including cash, equity grants, and all other forms of remuneration"); In re Lehman Bros., Inc., No. 15-cv-8989, 2016 WL 4197594, at *1 (S.D.N.Y. Aug. 8, 2016) ("[C]ompensation could be paid in equity awards, as opposed to cash."). Although the Termination Agreement does not specifically mention equity, it provides examples of remuneration "such as" bonuses and special payments. (Termination Agreement § 2.)

[8] "Affiliated enterprises are legally independent enterprises that, in their relationship inter se, are enterprises in which a majority ownership interest is held and enterprises which hold a majority of the ownership interest." Aktiengesetz [AktG] [Stock Corporation Act], § 15, https://www.gesetze-im-internet.de/englisch_aktg/englisch_aktg.html (Eng.).

There is no indication that list is exhaustive; rather it merely lists examples of forms of remuneration. As established above, equity is a form of remuneration.[9] Therefore, the written agreements would foreclose plaintiff's claims based on the alleged oral contracts even if the oral contracts were not barred by the Statute of Frauds.

### C. Individual and Corporate Liability

Finally, Defendant argues that there is no basis for liability against the individual or corporate defendants in this case. (Mot. at 13.) As to the Individual Defendants, Defendants argue that officers acting on a corporation's behalf are not personally liable for their contractual obligations unless they explicitly indicate their intention to be so. (Id. at 16 (citing Lerner v. Amalgamated Clothing and Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991).) As to the Corporate Defendant, Defendants argue that Alva Energy, Inc. was not a party to any contract with Plaintiff and that successor liability does not apply. (Id. at 14-16.) Plaintiff counters that the underlying oral contract was between the Individual Defendants and Plaintiff, not the Corporate Defendant and Plaintiff. (Opp. at 17-19.) On the corporate liability issue, Plaintiff contends that Alva Energy, Inc. is only named as a nominal party to allow for the relief sought. (Id. at 19-20.)

I agree with Defendants on this issue as well. Any oral contract that Defendant Krellenstein entered into with Plaintiff would have been on behalf of the corporation, Alva Energy LLC, and adopted once Alva Energy LLC was formed and accepted Plaintiff's services. See In re Windsor Plumbing Supply Co., 170 B.R. 503, 523 (Bankr. E.D.N.Y. 1994) ("[T]he corporation will become bound if it ratifies by word or deed such a contract subsequent to its proper incorporation."). There are no allegations in the complaint that would indicate that Defendant Krellenstein intended to

[9] Additionally, the Aktiengesetz (the German Stock Corporation Act) even references "share-based remuneration." See Aktiengesetz [AktG] [Stock Corporation Act], § 87(a)(1)(7), https://www.gesetze-im-internet.de/englisch_aktg/englisch_aktg.html (Eng.).

assume personal liability on that oral contract. "Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Lerner, 938 F.2d at 5 (internal quotation marks and citation omitted). This is not one of the "rare cases" where overwhelming evidence of the signatory's intent to be bound has been shown. Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co., 301 F.3d 50, 53 (2d Cir. 2002) (citation omitted). Thus, the individual defendants would not be liable for any breach of the contract. Because I find that there was no enforceable oral contract and alternatively that there could be no individual liability on any oral contract as alleged in the complaint, I decline to address the academic point as to the propriety of including Alva Energy, Inc. as a nominal defendant versus a real party in interest.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second count is for breach of the implied covenant of good faith and fair dealing. (See Amend. Compl. ¶¶ 36-40.) "The covenant of good faith and fair dealing embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. The covenant is implied in every contract governed under New York law." Boart Longyear Ltd. v. All. Indus., Inc., 869 F. Supp. 2d 407, 413 (S.D.N.Y. 2012) (cleaned up). Plaintiff argues that the Individual Defendants entered into a "malicious scheme designed to deprive Plaintiff the benefit of his bargain" by freezing him out of Alva Energy's business and taking the "patently false position" that Alva Energy, Inc. is "a totally different company" than the one with which Plaintiff contracted for a 15% equity stake. (Amend.

Compl. ¶ 38.)[10] Plaintiff contends that the conduct underlying his claim for breach of the implied covenant is distinct from the conduct underlying his breach of contract claim: the implied covenant claim is based on the freezing out of Plaintiff and messages stating that Plaintiff's stake was for an entirely different company, whereas the breach of contract claim is based on Defendants' failure to memorialize Plaintiff's 15% interest in Alva Energy, Inc. (Opp. at 23.) Defendants assert that if the oral agreement was unenforceable, the claim for breach of the implied covenant must also be dismissed. (Mot. at 23.)

As established earlier, the oral agreement is unenforceable. This alone forecloses Plaintiff's claim on this count because under New York law, when an oral agreement is unenforceable, there can be no breach of the implied covenant. See Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015) ("Without an underlying binding contract, there can be no breach of the implied covenant of good faith and fair dealing."); see also Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (finding that there could be no breach of the implied covenant once the court determined there was no underlying contract). In addition, this claim would be redundant of any breach of contract claim despite Plaintiff's attempt to distinguish the underlying conduct because freezing the Plaintiff out of the business and not providing him with any promised equity are similar practices based on the same facts that resulted in Plaintiff not receiving what he considered his proper share. Courts have found that claims for breach of the implied covenant must be dismissed when there is an insufficient distinction in the underlying conduct alleged. See, e.g., Cruz v. FXDirectDealer, LLC,

[10] In the Amended Complaint, Plaintiff named Alva Energy, Inc. as having breached the implied covenant of good faith and fair dealing. (See Opp. at 20 n.3 (citing Amend. Compl. ¶ 39).) Plaintiff requests leave to amend the complaint to instead name the Individual Defendants as having breached the implied covenant, "[t]o the extent that any further clarification is required." (Id.) Because I find that this claim fails as a matter of law, leave to amend would be futile. See Bentz v. City of New York, 249 F. Supp. 3d 640, 644 (E.D.N.Y. 2017) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (internal quotation marks and citation omitted).

720 F.3d 115, 125 (2d Cir. 2013); Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016); Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004). Therefore, this count must also be dismissed.

## III. Declaratory Judgment

Plaintiff seeks a declaratory judgment declaring that Plaintiff owns 15% of Alva Energy, Inc.'s stock. (Amend. Compl. ¶¶ 41-44.) However, because I have dismissed Plaintiff's claim for breach of contract, the duplicative request for a declaratory judgment must also be dismissed. Jujamcyn Theaters LLC v. Fed. Ins. Co., 659 F. Supp. 3d 372, 383 (S.D.N.Y. 2023).

## CONCLUSION

For these reasons, Defendants' motion to dismiss is **GRANTED**.

So Ordered.

Dated: September 14, 2026
Brooklyn, New York

/s/ Carol Bagley Amon

Carol Bagley Amon
United States District Judge